though made directly with the plaintiff, for it was communicated to him by his brother, and the latter evidently acted as his agent.

It is now settled in this state that an agreement made in behalf of a corporation about to be formed, although not initially binding upon it, may, by the company's acts after it attains a legal existence, be so ratified as to become a corporate obligation. This ratification may be effected by the person who entered into the original agreement, if that person, at the time of the ratification, has become an executive officer of the company, entitled in that capacity to bind it by such an agreement. Oakes v. Water Co., 143 N. Y. 430, 38 N. E. 461. This agreement in question was certainly one which the defendant's directors had power to make or to ratify. Hiring employés, and allowing them vacations with a continuance of salary, are among the commonest features of corporate management. This being so, the making or ratification of such an agreement by the defendant's president was prima facie valid, and threw upon the defendant the burden of showing that it was without authority. Patterson v. Robinson, 116 N. Y. 193, 22 N. E. 372. This burden the defendant made no attempt to sustain.

It is argued that this money was a mere gratuity, and that the promise to pay it was but an executory promise to make a gift, and was wholly without consideration. That is an erroneous view of the situation. The defendant agreed to pay a specified sum for a specified period of service, which did not include the time that plaintiff was away. The plaintiff's actual services were a sufficient consideration for the whole sum agreed to be paid.

That the agreement was ratified seems clear. There was no express ratification, for neither the plaintiff nor his brother had any conversation on the subject with Hulbert after the incorporation of the defendant. But there was an implied ratification. It was Hulbert's duty, if, as the defendant's representative, he wished to disavow the agreement, to so notify the plaintiff. He had, of course, full knowledge of its existence, and that the plaintiff was acting in reliance upon it. He accepted the plaintiff's services, rendered in pursuance of the agreement; and the defendant, which was bound by his action, cannot now be permitted to repudiate it.

The judgment and order appealed from should be affirmed, with costs. All concur.

---

## PARMENTIER v. AMERICAN BOX-MACH. CO.

(Supreme Court, Appellate Division, First Department. October 20, 1899.)

1. FACTORS—RECOVERY OF COMMISSIONS—COUNTERCLAIM—CONVERSION.

 A factor received goods on commission under an agreement stating no time within which they should be sold, and requiring him to pay for them four months after the shipment of goods previously sold him. The agent sold a part, but failed to deliver the proceeds to his principal on demand. *Held*, that the relation between the parties was that of debtor and creditor, and hence the principal could not set up a counterclaim, after demand made for the proceeds of such sale, on the ground of conversion, in an action by the agent to recover for his commissions.

**2. SAME—DEMAND FOR UNSOLD GOODS.**
    Where a factor sold part of goods consigned to him, and while in possession of the remainder, and with a right to sell them, sued his principal for commissions, a demand for such goods, contained in a letter delivered to him, the contents of which he did not know until the person delivering it had departed, and when the goods, with the knowledge of the principal, are 3,000 miles away, does not constitute such a demand and refusal as to render such factor guilty of conversion of the unsold goods.

Appeal from trial term.

Action by Isaac W. Parmentier against the American Box-Machine Company. From a judgment in favor of plaintiff, defendant appeals. Affirmed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, PATTERSON, and O'BRIEN, JJ.

Julius M. Mayer, for appellant.
George S. Coleman, for respondent.

PATTERSON, J.    This case has been treated by the parties, and was tried and disposed of in the court below, as an action at law, brought to recover commissions on the sale of goods, to which the plaintiff claimed to be entitled, under the terms of a written agreement between himself and the defendant. The cause was tried by the court without a jury, and decided in favor of the plaintiff. From the judgment entered upon that decision this appeal is taken. A perusal of the record shows that, if the plaintiff were entitled to recover at all, there was abundant evidence to sustain the court's finding as to the amount due him. By the terms of the contract, he was entitled to commissions upon sales made by him in Great Britain, as well as those made by the defendant in the same territory. The contract provided for the shipment of certain goods by the defendant to the plaintiff as to which he was a purchaser, and no question arises concerning those goods. The real controversy grows out of those provisions of the contract which relate to the employment of the plaintiff as the agent of the defendant to sell its goods in Great Britain. In the instrument it is provided that the defendant should, within 30 days from the 12th of March, 1891, ship certain merchandise on consignment to the plaintiff, to be delivered to him without expense in London, and which he should place in warerooms in London for exhibition, with the right to receive orders for such merchandise, or duplicates thereof, to be furnished by the defendant upon requisition of the plaintiff; that upon all sales made by him within the period of six months from and after the delivery of such consigned merchandise, at certain prices fixed in the agreement, he should have a commission of 40 per cent. on a part of such merchandise and 50 per cent. on the remainder, and upon all sales made after the expiration of six months his commission should be reduced to a lower rate. By a stipulation of the agreement the plaintiff was appointed the agent of the defendant for the sale of its manufactures in Great Britain at the prices named. There is also a provision in the agreement respecting the appointment of the plaintiff as its sole agent in Great Britain if he makes sales of the consigned goods

within a year from the date of the delivery of the first consignment in London, and then it proceeds to recite that the defendant reserves the right to sell its goods in Great Britain, but it agrees to pay to the plaintiff upon all sales so made by it commissions as before provided. The agreement, after referring to other matters not now material, expressly stipulates as follows: "Payment of all machinery after first plant to be four months from shipment from this side." The defendant, in its answer, admitted the making of the agreement, the employment of the plaintiff, its obligation, if it made sales in Great Britain, to pay plaintiff a commission; but it denied that the plaintiff made sales prior to the expiration of six months from and after the delivery of certain of the merchandise to him in London. An examination of the record shows that some of the merchandise was sold by the plaintiff within six months, which would entitle him to a commission of 40 per cent. on some and 50 per cent. on other goods; and some sales were made after the expiration of the six months, entitling him only to the diminished commission; and it appears that in making up the amount of the plaintiff's recovery the commissions were allowed at the appropriate amounts as provided for in the contract. The commissions seem to have been allowed upon list prices, which appears to be in accordance with the terms of the contract.

The principal matters in dispute between the parties arise upon counterclaims interposed by the defendant. Those counterclaims are pleaded, and the effort is made to sustain them, as causes of action for the conversion of goods and the proceeds of goods belonging to the defendant. They are some of the same goods, or the proceeds of some of the same goods, as those upon the sale of which the plaintiff's claim for commissions is founded. These causes of action, it is claimed, arise out of the following facts: Pursuant to the agreement, the defendant shipped to the plaintiff certain merchandise, which was received by him in England in August, 1891. He sold a portion of the merchandise so consigned, and received therefor a sum of about $3,000. The defendant demanded from him the net proceeds of such sales after deducting his proper commissions, but the plaintiff has not complied with such demand, from which it is claimed (and the allegations of the answer are distinctly made) that the plaintiff received the goods and the proceeds thereof in a fiduciary capacity, and, not having complied with the demand for such proceeds, he has converted them to his own use, and misapplied them, while acting as agent, and in such fiduciary capacity. The plaintiff did not sell all the goods consigned to him, but at the time at which he commenced this action certain of those goods were still in London. After the action was brought, and before answer, the defendant caused a written notice or demand to be served upon the plaintiff for the delivery of the unsold goods, and it is alleged in the second counterclaim that, while acting in a fiduciary capacity, the plaintiff fraudulently misapplied such goods to his own use, and converted them. It is unnecessary for us to determine as a question of pleading whether these counterclaims were properly interposed as causes of action in tort, for we are satisfied that under the agree-

ment made between the parties, and on all the proofs, the counter-claims are not sustained, even if they are properly pleaded. That the plaintiff throughout all the transactions was the agent of the defendant is plain; that a factor or commission merchant, from the very nature of his employment, acts in a fiduciary capacity, is also plain. In that relation the consignor remains the owner of the goods, and is entitled to them or their proceeds, subject to the lien of the factor for commissions and advances. But it is always competent for the parties to change by agreement the ordinary legal relations existing between factor and principal. Baker v. Bank, 100 N. Y. 34, 2 N. E. 452. That was done in this case. Concerning the con-signed goods, it is quite evident from the terms of the agreement, and from the circumstances and surroundings under which the agree-ment was made, as they appear in evidence, that as to those con-signed goods the parties intended that the relation of debtor and creditor should be established between the defendant and the plain-tiff. By the terms of the agreement, the plaintiff was not limited as to any time within which he should make sales of the consigned goods, but he was required to pay for all the merchandise within four months after the first plant was shipped from the United States. By that first plant is meant the merchandise sold to the plaintiff, and as to which no controversy exists between the parties. This appears from the terms of the agreement, for the consigned goods are specifically referred to in that agreement as "a second plant, consisting of ten machines of the same kind first hereinbefore men-tioned." If the plaintiff had sold the goods immediately upon ar-rival, he was not required to return those proceeds at once to the defendant. He might use them in his business or otherwise. He was only to pay for them within four months. We are not concerned with any other questions of construction that might arise in the interpretation of this contract, but it is manifest that it never was intended that the plaintiff should receive the proceeds of goods with the obligation to return those same proceeds, and with an interdic-tion of their use for his own purposes. Therefore there was no conversion of those proceeds. Nor was there any conversion by the plaintiff of the goods not sold. The evidence fully discloses the situ-ation as to them. There were demands of a certain character made upon the plaintiff for the goods before the commencement of this action, but those demands were either ineffectual, or were abandoned by the defendant through the act of its authorized agent, Mr. Sheard. While the plaintiff still had the right and authority to sell those goods, he came from England to the city of New York, and brought this action. The day after it was brought, the defendant made what it calls a "demand" upon the plaintiff for the unsold merchandise. That demand was contained in a letter written by one of the de-fendant's attorneys, which was left with the plaintiff, who did not read it, nor know its contents, until after the person delivering it had left him. The situation was perfectly well known. The plaintiff was in New York, and the unsold merchandise was 3,000 miles away. There was no refusal to comply with the demand. Under such circumstances the so-called "demand" was entirely ineffectual to

place the plaintiff in default, or to put him in the position of a wrongdoer, or one who had converted the property to his own use. There was no such demand and refusal as would warrant a finding of a conversion. The case of Richards v. Agricultural Works, 37 Hun, 1, has direct application here, and the opinion of Bradley, J., in that case is so thorough and conclusive upon the subject that its further consideration by us is unnecessary.

The judgment appealed from should be affirmed, with costs. All concur.